IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH C. WELLS,<br><br>        Petitioner,<br><br>        vs.<br><br>GARY SWARTHOUT, Warden, California State Prison,<br><br>        Respondent. | No. 2:10-cv-3244-JKS<br><br>MEMORANDUM DECISION<br>and<br>ORDER [Re: Motion at Docket No. 23] |

Joseph C. Wells, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Wells is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano. Respondent has answered. Wells has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

In August 2005 a Solano County Superior Court jury convicted Wells of first-degree murder in violation of California Penal Code § 187 with enhancements for personal use of a firearm under California Penal Code §§ 12022.5(a)(1) and 12022.53(b)-(d). The Solano County Superior Court sentenced Wells to serve fifty years to life in state prison. On February 14, 2007, the California Court of Appeal, First District, affirmed the state-court judgment in an unpublished, reasoned decision, *People v. Wells*, 2007 WL 466963 (Cal. Ct. App. Feb. 14, 2007). The California Supreme Court denied Wells' petition for review on May 9, 2007.

The facts of Wells' case are unique and are therefore are repeated here as they are necessary to an understanding of this Court's decision. The California Court of Appeal summarized the facts supporting his conviction for murder as follows:

Evidence presented at trial demonstrated that sometime before December 2001, a woman who was living with defendant, Christina Jones, began dating another man, Michael Sinay. Over the course of a year, as Jones maintained relationships with both men, the men engaged in an escalating series of confrontations involving threats, violence, and property damage, most of which were initiated by defendant. As one example among several, in October 2002, defendant pursued a car driven by Sinay in a high speed chase through Vallejo, Sinay's hometown, eventually rear-ending the car. Soon after, Sinay drove with a friend, Michael Yokoi, to defendant's home in Richmond. Throwing rocks, they smashed the windows of defendant's vehicle.

On December 21, 2002, Sinay was driving with Yokoi in the latter's white truck when they spotted defendant's parked vehicle in Vallejo. Yokoi put his truck in reverse gear and backed into the car, denting it. In an interview with police a few days later, Jones, who had driven defendant's car to Vallejo, said defendant was aware that a white truck had caused the damage to his car. She also told police that defendant was so angry after the incident that she took her children to spend the night at her mother's house, rather than remain in the home she shared with defendant. That night, Sinay saw defendant drive by his home.

Two nights later, on December 23, Sinay, Yokoi, Fred Heley, and Sinay's brother, James, were in Sinay's garage, which doubled as a recreation room. Around 11:30 p.m., Yokoi, James, and Heley left the garage to go to Heley's house. Yokoi split off to go to his truck, which was parked across and up the street. James and Heley continued up the street and around the corner toward Heley's house. James heard a vehicle start. Then he heard gunshots behind him. The two ran back toward Sinay's house, where they found Yokoi lying in the driveway. As he ran up, James saw a black Ford Mustang drive away with its lights off.

Sinay's mother was wrapping Christmas gifts in a bedroom on the second floor when she heard the gunshots. She got up, looked out the window, and saw a man in the driveway firing a gun. He was wearing dark clothes and a beanie. She opened the bedroom door and began shouting. Sinay heard the gunshots while he was still in the garage. He grabbed a telephone to call 911 and, as he called, stood on a stool to see out the garage window. He saw a "hefty" man in dark clothes and a beanie walking away. The man got in a dark Mustang and drove away. Sinay noted that the car had license plates from "Nino's" dealership. In a transcript of the 911 call from Sinay, he identified defendant as the shooter. Yokoi died from six gunshot wounds.

The police investigation revealed that defendant had purchased a blue Mustang convertible from Nino's Motors in Vallejo in early December. Police located the Mustang five days later in Vallejo in the garage of one of defendant's sisters. Inside was a cell phone and a receipt from a Target store in Pinole, time-stamped December 23 at 7:33 p.m. A contemporaneous surveillance tape from Target showed a man identified as defendant dressed in a black beanie, black shirt, and black pants.

2

A Sprint engineer, qualified as an expert witness, testified about the calls to and from defendant's cell phone that night.  She stated that Sprint maintained cell phone receiving towers about one-half to one mile apart in urban areas and three to five miles apart in rural areas.  In the vicinity of Vallejo and Richmond, a tower would typically be located within one-half to one mile, at most, of any caller. Because Sprint records the location of the tower receiving and routing each call, the caller's location at the time of a call can be estimated in urban areas with an accuracy of between one-half and one and one-half miles.   Judging from the pattern of received and outgoing calls, the engineer determined that defendant's cell phone was located in Richmond at 10:35 p.m. on the night of December 23; on or near Cummings Skyway in Crockett, a highway between Richmond and Vallejo, at 11:02 p.m.; in Vallejo at 11:17 p.m.; and back in Richmond by 12:20 a.m. the next day.

The Carquinez Bridge is a toll bridge located on U.S. Interstate 80, a direct route between Richmond and Vallejo.  At the time of the shooting, the bridge had 11 manned toll lanes, with a camera located behind each toll-taker.  In addition, there were two wide-angle cameras covering, between them, all toll lanes.  The bridge also had one FasTrak lane, No. 7. Vehicles passing through this lane were not required to stop, and it had no individual camera.   The wide-angle camera was therefore the only photographic record of vehicles passing through lane No. 7.  The individual cameras were located above the toll collector, pointing toward the door of the toll booth. As a result, the view provided by the camera was variable.  As a California Department of Transportation (Caltrans) employee testified, "Sometimes you can get a very good view. If you have [a] large collector, you won't get much of a view of the person in the vehicle. If our tape is any good, you might get a good picture. If our tape is bad, you won't get anything."  Caltrans's practice was to reuse the videotapes from these cameras every three to six weeks.  The video quality from the cameras was described as "inconsistent," with images deteriorating as the videotapes aged through reuse.

Vallejo police detective Joseph Iacono obtained and viewed the videotapes made at the Carquinez Bridge during the hour-long period prior to Sinay's call to 911 on December 23.  Iacono retrieved 13 tapes, 9 of which, he was told, covered all of the lanes individually except one, and 4 of which were wide-angle views.  He described the images as "fair."  Asked whether he had a "clear view" of the passing cars, he responded, "Sometimes yes. Sometimes no. Some cars are easier to make out than others."  In a review of the tapes lasting several days, Iacono failed to find a blue Mustang with Nino's dealer plates passing through the toll booths.  When he was finished, Iacono returned the tapes to Caltrans without making a copy of them.

Nearly a year later, a second detective, Stephen Darden, attempted to reacquire the videotapes, but by then some had been reused. Darden ultimately obtained only the wide-angle views.  He spent several days reviewing the tapes he was able to get, focusing on cars passing at approximately 11:00 p.m. on the night of the shooting.  Again, defendant's Mustang was not located. Darden testified that he saw one Mustang, but on closer inspection, using enhancing technology borrowed from the sheriff's office, the vehicle turned out not to be defendant's.

One of defendant's sisters testified that she borrowed defendant's cell phone on the night of the shooting. She drove from her home in Vallejo to Richmond about 9:00 p.m. to pick up the cell phone and borrow money from defendant to finish her Christmas shopping. After picking up the cell phone, she drove back to Vallejo, where she shopped, using the cell phone periodically. She returned to Richmond shortly before midnight. Defendant's sister reviewed the available wide-angle videotapes from the Carquinez Bridge taken that evening. Although she saw cars that might have been hers crossing the bridge that night, she was unable to determine with certainty whether her car was on the tapes.

The failure of the police to maintain copies of the Carquinez Bridge videotapes had become an issue earlier in defendant's prosecution. Defendant had become aware that the tapes were largely unavailable after making a discovery request in October 2003. He subsequently sought and obtained an order from the trial court dismissing the charges against him as a result of the failure of the police to maintain exculpatory evidence. This court reversed that dismissal, concluding in a nonpublished opinion that the police officers' testimony about their failure to locate defendant's car on the videotapes constituted "'comparable evidence'" to the lost tapes and that there was insufficient evidence to support defendant's claim that the officers had acted in bad faith in failing to maintain the evidence.

After the presentation of evidence about the videotapes at trial, the court asked counsel to approach the bench, and a discussion was held off the record. Following the discussion, defense counsel asked in the presence of the jury to make a motion. Granted permission, counsel made a speaking motion to dismiss the case on the ground that the videotapes had not been preserved. The trial court responded by asking whether "this [is] the motion that's already been decided by the Court of Appeal[ ]?" After defense counsel responded affirmatively, the court said again, "You may make your motion." Defense counsel then explained the basis for her motion in some detail, arguing that the videotapes would have exculpated defendant by demonstrating that he did not cross the bridge and that the testimony of the detectives was not comparable to the tapes.

After defense counsel finished, she was reprimanded by the trial judge, who said, "You had asked to bring this motion when you approached the bench a moment ago. The Court had advised that we would not entertain the motion at this time and told [you to] call your next witness. Despite that you brought the motion up in front of the jury. The Court is entertaining it at this time. Is that an accurate statement of the ... at-bench conference?" Defense counsel responded, "It is, your Honor. I just wanted to make the record. I thought your Honor would say we would put it over, but when asked numerous questions, I then now made my record." The prosecutor was permitted brief counter-argument, during which she made the point that "[a]s the Court of Appeal found in this case, there was no violation." The court then denied defendant's motion.

After the jury was dismissed for the day, the court returned to the topic of the motion to dismiss, asking defense counsel why she had made the motion in

contravention of the court's direction during the bench conference.   Counsel apologized, explaining that she believed she was required to make the motion on the record and had anticipated that the court would defer argument.   Although the prosecutor objected vehemently to defense counsel's conduct, she sought no particular sanction, and the court deferred the matter.   After extensive later discussion, the court instructed the jury over defense objection as follows: "Last Friday, on July 29th, 2005, you were present while the Court heard and denied a defense motion to dismiss this case based on the return of the VHS videotapes to Caltrans by Detective Iacono. [¶] The Court of Appeal[ ] in San Francisco has reviewed the conduct of Detective Iacono and found that there was no evidence that he acted in bad faith and that the return of the tapes to Caltrans did not violate [defendant's] right to due process under the law. This legal issue was decided by the Court of Appeal[ ] on January 26th, 2005.   Thus, that legal issue is not before you for consideration. So that is my admonition to you."

The prosecutor did not address the bridge videotape evidence in her opening argument.   Defense counsel, however, argued to the jury that the evidence was undisputed that the detective did not see a Mustang on the tapes.   During rebuttal argument, the prosecutor, over defense objection, turned to this topic, arguing: "The bridge tapes, that's a lot of drama about nothing.  Corporal Iacono testified to you he did not see [defendant's] car cross the bridge. He also testified to you that he viewed a couple thousand cars.  You know, that would be like trying to find a needle in a haystack.  The reasonable inference from that testimony is that he merely missed it.... [¶] ... [¶] Corporal Iacono told you that the in-booth tapes that the defense has talked about, not good quality.  He couldn't see the driver's faces.  Couldn't see the cars ."

The trial court denied defense counsel's motion for leave to deliver a surrebuttal to respond to this argument, but the court-with the consent of defense counsel and over prosecution objection-agreed to give an instruction addressing the issue.   As delivered immediately prior to the formal jury instructions, the court's special instruction summarized in very general terms the evidence regarding the acquisition, review, and reuse of the bridge videotapes, noting that the witnesses "described the quality of the videotapes generally, among other things" and that Iacono had not seen a Mustang.   The court noted that counsel had addressed the evidence about the videotapes in argument and then stated: "For example, [the prosecutor] argued that Detective Iacono must have missed it; that it's like looking for a needle in a haystack. [¶] The attorneys are allowed to make reasonable inferences from the evidence. What the attorneys say is not evidence.... You consider the arguments of the attorneys, but the actual testimony and the evidence is that which came from the witnesses."

Defendant was convicted, and the enhancements were found to be true. The court imposed a sentence of 50 years to life.

*Wells*, 2007 WL 466963, at *1-5 (footnotes omitted) (citations omitted).

In April 2008 Wells filed a state-habeas petition in the Solano County Superior Court.

Doc. No. 1 at 2,10.  The state court held an evidentiary hearing on Wells' ineffective assistance

of trial counsel claim, but on June 29, 2009, the trial court denied the petition in an unpublished,

reasoned decision.  *In re Wells*, No. FCR253794 (Cal. Super. Ct. Jun. 29, 2009); Doc. No. 1 at

177-179; Ex. 18 at 1-3.  Wells' appeal to the California Court of Appeal was summarily denied

on December 17, 2009, and the California Supreme Court also summarily denied his petition on

November 10, 2010.  Wells timely filed his Petition to this Court on December 3, 2010.

## II.  GROUNDS/ISSUES RAISED

In his Petition to this Court, Wells raises three grounds for relief, including: (1)

ineffective assistance of trial counsel because defense counsel failed to call two alibi witnesses

and four eyewitnesses; (2) prosecutorial misconduct and instructional error by the trial court, as

well as several other errors by the trial count, all of which Well's claims amounts to a violation

of due process; and (3) the combined errors by the prosecution and trial court cumulatively

violated Wells' right to a fair trial.

Wells' second ground contains six claims, including: (a) prosecutorial misconduct

because the prosecutor urged the jury to infer that the detective did not see Well's car cross the

bridge on the tapes simply because he merely missed it due to the video's poor quality and the

number of cars that crossed the bridge on the tape; (b) that the trial court erred by giving a

curative instruction in response to defense counsels objection to the prosecution's argument on

rebuttal regarding the lost bridge tapes; (c) that the trial court erred by instructing the jury (i) that

the Court of Appeal had already ruled that there was no evidence that the detectives who viewed

the bridge tapes that went missing acted in bad faith, (ii) that the return of the tapes that went

missing did not violate Well's due process rights, and (iii) that the legal issue therefore was not

before the jury because the court of appeal already decided it; (d) that the trial court erred by not

allowing defense counsel's request for surrebuttal following the prosecution's statement during

rebuttal concerning the lost bridge tapes; (e) that the trial court erred by refusing to give the jury

an instruction, CALJIC 2.28, on discovery; and (f) that the trial court erred by denying defense

counsel's request for a *Kelly* hearing to determine the scientific reliability of the expert testimony

presented concerning the use of Wells' cell phone records to pinpoint the location of his cell

phone at the time the calls were made.

Respondent contends that subpart (b) of Wells' second ground—his challenge to the trial

court's curative instruction given to the jury in response to the defense counsel's objection to the

prosecutor's argument on rebuttal—is procedurally barred on adequate and independent state

grounds.  Respondent also claims that subpart (e) of Wells' second ground—his challenge to the

trial court's refusal to give CALJIC 2.28—is procedurally barred on adequate and independent

state grounds.  Respondent does not raise any other affirmative defense.  *See* Rules Governing

Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011) ("The answer must . . . state

whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural

bar, non-retroactivity, or a statute of limitations.").

### III.  STANDARD OF REVIEW

The standard of review governing federal habeas petitions is contained in the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), which

applies to all federal habeas petitions filed after the statute's enactment in April 1996.  *See Lindh*

*v. Murphy*, 521 U.S. 320, 326 (1997) (noting that Congress's intent was for AEDPA to apply to

cases that were filed after the statute's enactment).  Because Wells filed his Petition after the effective date of the statute, its provisions apply to his case.

Under AEDPA, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling, Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  The Supreme Court has noted that "[a]voiding these pitfalls does not require citation of our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citing *Williams*, 529 U.S. at 409-10, 412).  The Supreme Court has made clear that the "objectively unreasonable" standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).  "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and

demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 130 S. Ct.

1855, 1862 (2010) (citations omitted) (internal quotation marks omitted).  "[A]bsent a specific

constitutional violation, federal habeas corpus review of trial error is limited to whether the error

'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

*Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637,

642, 643 (1974)).  In a federal habeas proceeding, the standard under which this Court must

assess the prejudicial impact of constitutional error in a state court criminal trial is whether the

error had a "substantial and injurious effect" or influence in determining the outcome.  *Fry v.

Pliler*, 551 U.S. 112, 121 (2007).  Because "[s]tate court judgments of conviction and sentence

carry a presumption of finality and legality," the petitioner has the burden of showing by a

preponderance of the evidence that he or she merits habeas relief.  *Silva v. Woodford*, 279 F.3d

825, 835 (9th Cir. 2002).

> The Supreme Court recently underscored the magnitude of the deference required:
>
> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

9

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early*, 537 U.S. at 10. Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam) (stating that when no Supreme Court case gives a "clear answer to the question presented," then the state-court decision cannot be contrary to or an unreasonable application of clearly established federal law); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009).  Accordingly, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established" by the Supreme Court. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

In applying these standards in habeas review, this Court reviews the "last reasoned decision" by the state court. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court. *See Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state

10

court explaining the state court's reasoning."); *Ylst v. Nunnemaker*, 501 U.S. 797, 802-03 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.  *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1)).  This presumption applies to state-trial courts and appellate courts alike.  *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence.  Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."  *Richter*, 131 S. Ct. at 784-85 (2011).  When there is no reasoned state-court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary."  *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).  However, "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  *Id.* at 785 (citing *Ylst*, 501 U.S. at 803).  Where the

presumption applies, this Court must perform an independent review of the record to ascertain whether the state-court decision was "objectively unreasonable." *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)).   In conducting an independent review of the record, this Court presumes that the relevant state-court decision rested on federal grounds.   *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

Moreover, this Court gives that presumed decision the same deference as a reasoned decision.  *Richter*, 131 S. Ct. at 784-85,  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams*. . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.

*Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000).

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## IV.  DISCUSSION

### A. Motion at Docket No. 23

On May 7, 2012, Wells filed a Motion for Appointment of Counsel at Docket No. 23.

There is no constitutional right to counsel in federal habeas proceedings.  *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman*, 501 U.S. at 756-57).  Appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing.  Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rules 6(a), 8(c) (2011).  This Court may appoint counsel under the Criminal Justice Act in this case if the Court determines that the interests of justice so require.  28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B); *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.").  This Court does not so determine.  Additionally, because all the pleadings are completed in this case, appointment of counsel at this stage is unnecessary.  Accordingly, Wells' request for the appointment of counsel at Docket No. 23 will be **denied**.

## B.  Procedural Bar

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman,* 501 U.S. at 729.  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."  *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).  Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case clearly and expressly states that its judgment rests on a state procedural bar.  *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (citing *Harris*, 489 U.S. at 262-

63).  "[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default."  *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks omitted); *see also Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) ("For a state procedural rule to be 'independent,' the state law ground for decision must not be 'interwoven with federal law.'" (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983); *Harris*, 489 U.S. at 265)).  The fact that the state court also ruled on the merits in the alternative does not vitiate a procedural bar defense.  *Comer v. Schriro*, 480 F.3d 960, 964 n.6 (9th Cir. 2007) (citing *Harris*, 489 U.S. at 264 n.10).

   In California, a claim of instructional error is waived on appeal unless a timely objection is made.  *See People v. Davis*, 115 P.3d 417, 445 (Cal. 2005) ("Here, however, defendant's counsel failed to object to the prosecutor's statement. Review on appeal is therefore barred . . . ."); *People v. Cunningham*, 25 P.3d 519, 560 (Cal. 2001) ("Defendant's failure to assert a timely objection results in a waiver of the issue." (citing Cal. Evid. Code. § 353)).  California's contemporaneous objection rule is "clear, consistently applied, and well-established" where, as here, a party fails to make a proper objection to the admission of evidence.  *Melendez v. Pliler,* 288 F.3d 1120, 1124-25 (9th Cir. 2002) (holding that the district court erred finding that Meledez's claim under the Sixth Amendment was procedurally defaulted because the record showed that defense counsel had indeed objected).  The rule is well established under California Evidence Code § 353 and the Ninth Circuit has stated that California's contemporaneous objection rule is a valid procedural bar.  *Rich v. Calderon*, 187 F.3d 1064 (9th Cir. 1999) ("We may not review his six other prosecutorial misconduct claims because Rich procedurally

14

defaulted by failing to make contemporaneous objections, and the California court consequently invoked a procedural bar to their consideration, the validity of which Rich has failed to overcome." (citing *Harris*, 489 U.S. 255; Coleman, 501 U.S. 722)). Moreover, the California rule is entirely consistent with federal law as established by the United States Supreme Court, which also requires that an objection state the specific ground or grounds on which it is based.  Fed. R. Evid. 103(a)(1); *see Yakus v. United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."); *Peretz v. United States*, 501 U.S. 923, 936-37 (1991) (cases cited therein).

Although the ultimate burden of proving adequacy of a state procedural bar is on the Respondent, once Respondent has "adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner."  *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).  To prove a fundamental miscarriage of justice, Wells must show that a constitutional violation probably resulted in his conviction despite his actual innocence.  *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("In an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").  Although at the gateway stage Wells does not

15

need to establish his innocence as an "absolute certainty," he must demonstrate that it is more likely than not that no reasonable juror could find him guilty beyond a reasonable doubt. *House v. Bell*, 547 U.S. 518, 538 (2006). The Ninth Circuit stated:

> If a petitioner has procedurally defaulted on a claim, a federal court may nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates that not hearing the claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546; *Sawyer v. Whitley*, 505 U.S. 333, 339–40, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). An objective factor outside of a petitioner's control (e.g., ineffective assistance of counsel or a basis for the claim that was previously unavailable) could constitute cause. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). The petitioner can meet the prejudice prong if he demonstrates "that the errors . . . worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis,* 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). A petitioner can demonstrate a fundamental miscarriage of justice by "establish[ing] that under the probative evidence he has a colorable claim of factual innocence." *Sawyer,* 505 U.S. at 339, 112 S.Ct. 2514 (quotation marks omitted).

*Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

It is important to note that, in this context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Sawyer*, 505 U.S. at 339). To make the requisite showing of actual innocence, Wells must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 324, 327.

Ground 2(b): Curative Trial Court Instruction

Wells contends that the trial court erred by giving the following curative instruction:

16

Before I commence reading the formal jury instructions to you.  I am going to state the following.  You have heard testimony from Detective Lacono of the Vallejo Police Department and Captain Worley of Caltrans regarding videotapes of traffic on the Carquinez Bridge, and that several of the videotapes that had been taken of bridge traffic that were received for this case were returned back to Caltrans and taped over.  These witnesses described the quality of the videotapes generally, among other things.  You saw portions of two tapes, and those tapes are in evidence.

Detective Iacono testified that he looked at all of the bridge videotapes and did not see the Mustang go through the toll booth. Yesterday, the attorneys presented closing arguments to you and they argued about the evidence of the videotapes. For example, Ms. Jensen for the People argued that Detective Iacono must have missed it; that it's like looking for a needle in a haystack.

The attorneys are allowed to make reasonable inferences from the evidence. What the attorneys say is not evidence.  However, the evidence came from the sworn testimony of the witnesses, and that is what you evaluate in making your decision. You consider the arguments of the attorneys, but the actual testimony and the evidence is that which came from the witness.

Ex. 2, Vol. 4, at 1114-1115.

Specifically, Wells argues in his Petition to this Court that this instruction by the trial court amounted to essentially an endorsement of the prosecutor's view of the evidence; i.e., that the detectives did not see Wells' car cross the bridge only because they missed it since the bridge tapes were of poor quality and there were many cars that crossed the bridge on the tapes.  Wells' claims that this the instruction was an impermissible endorsement of the People's view. Respondent contends that because defense counsel failed to make a timely objection to the trial court's instruction when given the opportunity, this claim is procedurally barred by California's contemporaneous objection rule.

1.  State Court Decision

The California Court of Appeal noted that Wells was "barred from challenging the trial court's special instruction addressing the prosecutor's argument about the bridge tapes because he did not object to the instruction when given the opportunity to comment by the court."  *Wells*,

17

2007 WL 466963, at *7.  The court added that "it was the prosecutor who objected to the instruction, not defense counsel."  *Id.*  The court, however, did go on to address the merits of Wells' claim, notwithstanding the fact that the court concluded Wells had waived the argument by not objecting to the instruction during trial.  *Id.* at *7-8.  It noted that "[e]ven if there were no waiver, we would find no abuse of discretion in the trial court's instruction."  The trial court explained:

> We do not accept [Wells'] argument that by conjoining the summary and this instruction, the court adopted or endorsed counsel's argument.  At most, the courts instruction could be construed to imply that the inference argued by the prosecutor was reasonable.  This same inference could be gleaned from the mere fact that the court permitted the argument to stand, rather that be stricken.  That the court found the inference reasonable did not suggest that the court considered the inference to be the best or most likely inference given the totality of the evidence.

> It therefore did not constitute an endorsement of the prosecutor's argument.

*Id.* at *8.

### 2.  Analysis

Here, the California Court of Appeal clearly stated that Wells' challenge to the specific curative instruction at issue was barred because defense counsel failed to make a timely objection.  *Wells*, 2007 WL 466963 * at 7.  In fact, the Court of Appeal explicitly cited *Davis* in ruling that Wells' challenge to the trial court's curative instruction was barred.  *Id.* at * 7. Accordingly, this Court agrees with Respondent that, because Wells' claim was defaulted in state court on an adequate and independent state ground, it will not be considered unless Wells can demonstrate cause for the default and actual prejudice, i.e., a miscarriage of justice.  *See Coleman*, 501 U.S. at 729.

Wells has not met this standard.  In fact, he has made no attempt to meet this standard.

Wells actually acknowledged the procedural default applied by the California Court of Appeal in his Petition to this Court, but argues that the defense counsel did not need to make an objection after the curative instruction because defense counsel had already made a request for a mistrial. Pet. at 95-96.  According to Wells, implicit in this request was an objection to any lesser remedy. *Id.*  Respondent rightly points out, however, that the California Court of Appeal rejected that argument Wells made in a subsequent petition for rehearing before the state-appellate court.  Ex. 7 at 1-5; Ex. 8, Order Modifying Opinion and Denying Rehearing at 1 (Cal. Ct. App. Mar. 14, 2007).

"[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005).  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.  *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference). This is especially true where the highest court in the state has denied review of the lower court's decision.  *Id.*; *see West v. Am. Tel. &Tel.,* 311 U.S. 223, 236 (1940) ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).  Thus, this Court is bound by the California Court of Appeal's factual determination that Wells' defense counsel did not make a timely objection to the trial court's curative instruction.  Accordingly, subpart b of Wells' second ground—his challenge to the trial court's curative instruction—is procedurally barred. Wells is not entitled to relief on this ground.

Ground 2(e): Trial Court's Failure to Give CALJIC No. 2.28

Wells contends that the trial court erred in failing to give the CALJIC No. 2.28 to the

jury, and that this error compounded the alleged prosecutorial misconduct claim.  Doc. No. 1 at

105-107.  Respondent claims Wells' challenge to the trial court's failure to give CALJIC No.

2.28 is procedurally barred because defense counsel failed to request it in its final request for

instructions given to the trial court.

     1.  State Court Decision

The California Court of Appeal explained that CALJIC No. 2.28 is the California jury
instruction which:

> (1) explains to the jury the criminal discovery process, (2) informs the jury that
> one party failed to disclose certain evidence during that process that was
> subsequently used at trial and that the failure to disclose was "without lawful
> justification," and (3) permits the jury to consider the failure to disclose in
> weighing that evidence.

*Wells*, 2007 WL 466963, at *9.

In rejecting Wells' argument, the California Court of Appeal explained:

> There are two grounds for rejecting this argument. First, defendant did not
> request the instruction.  Although CALJIC No. 2.28 was contained in his preliminary
> jury instructions, submitted near the commencement of trial, it was omitted from his
> final request for instructions.  Defendant cites no authority holding that the trial court
> had a sua sponte duty to give CALJIC No. 2.28 in the absence of a proper request.
> On the contrary, because this is not the type of general principle of law so openly and
> closely connected with the facts that a sua sponte duty arose ( *People v. Coffman and
> Marlow* (2004) 34 Cal.4th 1, 101, 17 Cal.Rptr.3d 710, 96 P.3d 30), the failure to
> request it waived any claim of error based on the court's failure to deliver it.
>     Second, the instruction was inapplicable to this situation.  The trial court had
> no duty to deliver this instruction, even if requested, unless the instruction was
> supported by substantial evidence. ( *People v. Ward* (2005) 36 Cal.4th 186, 214, 30
> Cal.Rptr.3d 464, 114 P.3d 717.)  The premise of CALJIC No. 2.28 is that a party
> wrongfully withheld items of evidence in response to a discovery request, which
> items were later introduced at trial.  The tapes that were used at trial had been
> produced when requested. There was no evidence that the remaining videotapes were

20

wrongfully withheld.  Rather, by the time the defense requested them, the tapes had already been destroyed through reuse.  Moreover, the "withheld" tapes, having been destroyed, were not used at trial. Under these circumstances, there was no factual basis to support the giving of CALJIC No. 2.28**.**

*Id.*

2.  Analysis

Here, the California Court of Appeal specifically stated that the "failure to request it waived any claim of error based on the court's failure to deliver it."  *Wells*, 2007 WL 466963, at *9.  Respondent claims Wells' challenge is procedurally barred by California's contemporaneous objection rule.  The Ninth Circuit has held that the contemporaneous objection rule constitutes a valid procedural bar, *Calderon*, 187 F.3d at 1070.  "Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petition."  *Bennett*, 322 F.3d at 586.  Wells "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."  *Id.*

Wells has made no attempt to meet this burden.  He further has not shown "cause" for the default, "prejudice," or a "fundamental miscarriage of justice" if this Court does not address this claim on the merits.  *Cooper*, 641 F.3d at 327.  Accordingly, this Court agrees with the Respondent that subpart e of Wells' second ground is procedurally barred.  Wells is not entitled to relief on this claim.

21

**B.  Merits**

Ground 1: Ineffective Assistance of Trial Counsel

Wells claims that his trial court counsel was ineffective: (1) for failing to call four eyewitnesses which Wells contends would have testified that the shooter's physical characteristics were not consistent with his appearance; and (2) for failing to call two alibi witnesses which Wells claims would have testified that he was in a different city at the time of the shooting.

  1.  State Court Decision

After Wells filed his original state habeas petition in the Solano County Superior Court, the state court held an evidentiary hearing concerning his ineffective assistance of trial counsel claim.  The state court ultimately denied Wells' claim, stating:

> [Wells] has failed to show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. (Strickland v. Washington (1984) 466 U.S. 668, 687-688).  [Wells] argued that the trial counsel's presentation of witness Amy Wells to explain where [his] cell phone was used on the date of the crime combined with her opening statement and failure to present Kayman Wells and Anthony Edwards as alibi witnesses was ineffective. However, given the evidence of guilt, including that [Wells] had motive to kill the victim and Michael Sinay (because of Christine Jones); that [Wells] owned a car like the one seen at the crime scene; that [Wells] was wearing a jacket and hat like that of the perpetrator of the crime four hours before the crime; and that [Wells'] cell phone was within five miles of the crime scene before the crime and was not used during the crime, it is not reasonably probable that presentation of Kayman Wells and Anthony Edwards would have resulted in a more favorable outcome.  Neither witness would have had any effect on the above evidence.
>   [Wells] conceded in his memorandum of points and authorities after the evidentiary hearing that trial counsel had adequate reason not to present witnesses Andrew Hopwood and Lawrence Briones. [Wells'] argument that trial counsel should have presented Art and Zenaida Galang because of their testimony would have cast some doubt on the identification of [Wells] as the perpetrator is not a sufficient probability to undermine confidence in the outcome.

*In re Wells*, No. FCR253794 (Cal. Super. Ct. Jun. 29, 2009); Doc. No. 1 at 177-179; Ex. 18 at 1-3.

2. Analysis

Under *Strickland*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." (citing *Strickland*, 466 U.S. at 687)); *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." (citations omitted)). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a

sufficient showing under either one of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697

(courts may consider either prong of the test first and need not address both prongs if the

defendant fails on one).

     *Strickland* and its progeny do not mandate that this Court act as a "Monday morning

quarterback" in reviewing tactical decisions.  *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir.

1990).  Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too
> tempting for a defendant to second-guess counsel's assistance after conviction or
> adverse sentence, and it is all too easy for a court, examining counsel's defense after
> it has proved unsuccessful, to conclude that a particular act or omission of counsel
> was unreasonable.  A fair assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of hindsight, to reconstruct the
> circumstances of counsel's challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time.  Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance; that is, the defendant
> must overcome the presumption that, under the circumstances, the challenged action
> might be considered sound trial strategy.  There are countless ways to provide
> effective assistance in any given case.  Even the best criminal defense attorneys
> would not defend a particular client in the same way.

466 U.S. at 689 (citations omitted) (internal quotation marks omitted).

     In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold." *Schriro, supra,*
> at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard,
> a state court has even more latitude to reasonably determine that a defendant has not
> satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct.
> 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's specificity.  The more general the rule,
> the more leeway courts have in reaching outcomes in case-by-case determinations").

*Mirzayance*, 556 U.S. at 121.

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard. *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law." *Richter*, 131 S. Ct. at 785.

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Id.* at 786.

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding." *Morrison*, 477 U.S. at 382. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 131 S.Ct. at 791 (internal quotation marks and citation omitted). "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial." *Morrison*, 477 U.S. at 382. Wells' bears the burden of proving that counsel's trial strategy was deficient. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. "[He] bears the heavy burden of proving that counsel's assistance was neither

reasonable nor the result of sound trial strategy." *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).  "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy." *Id.* (quoting *Strickland*, 466 U.S. at 689).  "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681.

Wells has failed to carry this heavy burden.  He has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or that his defense was prejudiced by any alleged omission as required by *Strickland-Hill*.  Even if this Court agreed with Wells that his attorney should have called the witnesses in question, he would be unable to show that he was prejudiced as a result because the evidence against him was overwhelming.  Accordingly, this Court cannot say that the decision of the Solano County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

In addition, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, this Court cannot find that the state court unreasonably applied the correct legal principle to the facts of the Wells' case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state-court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.  Wells has failed to establish that

26

counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that defendant's defense was prejudiced, as required by *Strickland-Hill*. Wells is not entitled to relief under his first ground.

Ground 2(a): Prosecutorial Misconduct

Wells contends that the prosecutor committed misconduct in violation of his due process rights by arguing to the to the jury during rebuttal that it was reasonable to infer that the detective just "missed" Wells' mustang, and that had he looked hard enough, he would have seen the Mustang. Specifically, Wells challenges the following statement by the prosecutor at trial:

> The bridge tapes, that's a lot of drama about nothing. Corporal Iacono testified to you he did not see the defense car cross the bridge. He also testified to you that he viewed a couple thousand cars. You know, that would be like trying to find a needle in a haystack The reasonable inference from that testimony is that he merely missed it. He didn't see the Mustang that Detective Darden ultimately picked out and eliminated as defendant's car. They were trying to find him. The couldn't find him. They missed him.

Ex. 2, Vol. 4, at 1079-80.

1. State Court Decision

In rejecting Wells' claim of prosecutorial misconduct, the California Court of Appeal noted that, "[w]hile there is some basis for defendant's characterization of the prosecutor's argument as a critique of Iacono's work, the characterization is incomplete." *Wells*, 2007 WL 466963, at *5. The court added:

> The prosecutor's argument can more fairly be summarized as suggesting to the jury that there were reasons why Iacono might not have seen the Mustang on the tapes, even though the car did pass over the bridge. As the trial judge ruled, there was no principle of law that prevented the prosecutor from making this argument merely because the argument might have been refuted had the videotapes been preserved, so long as the argument was supported by evidence actually presented at trial or reasonable inferences from that evidence.

The argument that the Mustang could have crossed the bridge despite Iacono's failure to locate it was supported by substantial evidence and constituted a reasonable inference from that evidence. First, not every car passing through the toll booths could be viewed clearly. Iacono described the image quality on the tapes as "fair" and said that he could not get a clear view of every car passing through ("Some cars are easier to make out than others"). There was no individual camera for the FasTrak lane. These inherent limitations in the underlying videotape evidence made it possible for defendant's car to pass through undetected, wholly apart from Iacono's diligence. Second, there was other evidence suggesting that defendant's car had passed over the bridge, regardless of whether the detective spotted it. The receipt in the Mustang tying defendant to a purchase earlier in the evening suggests that he was driving the car that day. Between 10:30 p.m. and 11:15 p.m., his cell phone-the same cell phone later found in his car-passed along a route suggesting a trip from Richmond to Vallejo on U.S. Interstate 80, which would have required passage across the bridge. Two witnesses described the man leaving the scene of the shooting as having been dressed in exactly the manner defendant was dressed when he made the purchase earlier in the evening. All of this evidence suggests that defendant drove across the Carquinez Bridge that night, regardless of whether the detectives were able to locate his car on the tape. Accordingly, it was a reasonable inference that defendant crossed the bridge, despite the failure of the detectives to locate his car on the tapes. Because that inference would be firmly grounded in the evidence presented at trial, it would not constitute, as defendant argues, speculation about the content of the tapes. On the contrary, it is wholly independent of the content of the tapes.

*Id.* at 5-6 (footnote omitted).

In addition, the Court of Appeal rejected Wells' claim that the prosecutor argued an interpretation of the evidence "that the prosecution knew, or had reason to know, was not true."

*Id.* at 6. The court stated:

That simply is not the case here. For the reasons stated above, there was nothing false about the prosecutor's argument that the jury could infer that defendant's car crossed the bridge despite the detective's failure to identify it. Although Iacono's review appeared to have been thorough, such a review did not constitute conclusive proof that the Mustang did not cross the bridge because not all cars were clearly visible on the tapes. More important, there is no indication that the prosecutor knew something the jury did not about the situation, raising the issue of bad faith. Neither she nor the jury had seen the tapes, nor was she aware of any other evidence not disclosed to the jury that cast doubt on the inference she advocated. The prosecutor properly urged the jury to make an inference that, she argued, was the best fit for the evidence at

hand.

*Id.* (footnote omitted).

The court also rejected the claim by Wells that "the prosecutor's argument that Iacono could have overlooked the Mustang demonstrate[d] that the detective's testimony was not 'comparable' evidence to the tapes . . . thereby creating the basis for a claim that destruction of the tapes violated [Wells'] due process rights." *Id.* at 7.  The court explained that "the detectives described the tapes as they had existed, testifying that they provided variable and sometimes imperfect views of the passing vehicles and lacked individual coverage of one of the lanes." *Id.* The court noted that the employee from Caltrans also "echoed this testimony." *Id.*  Thus, the court concluded that, "[h]ad the original tapes been preserved, they jury would have been faced with the same inherent limitations in judging the significance of the detective's failure to spot [Wells'] car, regardless of thoroughness of his examination." *Id.*

The state appellate court did note, however, that it agreed with Wells "that the prosecutor erred in arguing to the jury that Iacono had not seen the Mustang spotted by Darden, thereby implying that Iacono's inspection was *demonstrably* fallible." *Id.*  The court explained that since "Iacono was never asked whether he saw the Mustang, there was no evidentiary basis for the prosecutor's statement." *Id.*  The court, however, ultimately concluded:

> We do not view this error alone as constituting the type of unfairness, deception, or reprehensible conduct necessary for a finding of prosecutorial misconduct, nor was it of such significance to have prejudiced the jury's decision in light of the record presented, which included strong independent evidence pointing to [Wells] as the shooter.

*Id.*

29

2. Analysis

A prosecutor may "prosecute with earnestness and vigor—indeed, he should do so." *Berger v. United States*, 295 U.S. 78, 88 (1935). "To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'" *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (quoting *Darden*, 477 U.S. at 181). Under this standard, the Ninth Circuit has stated:

> In determining whether a comment rendered a trial constitutionally unfair, factors [the court] may consider are whether the comment misstated the evidence, whether the judge admonished the jury to disregard the comment, whether the comment was invited by defense counsel in its summation, whether defense counsel had an adequate opportunity to rebut the comment, the prominence of the comment in the context of the entire trial and the weight of the evidence.

*Hein v. Sullivan*, 601 F.3d 897, 912-13 (9th Cir. 2010); *see Darden*, 477 U.S. at 182.

In essence, what is required is that reviewing courts consider the equivalent to evaluating whether there  was a "reasonable probability" of a different result. *See Hein*, 601 F.3d at 914-15.

Additionally, the Supreme court has stated that, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 181 (citations omitted) (internal quotation marks omitted). "Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996). "But, while [the government] may strike hard blows, [it] is not at liberty to strike foul ones." *Berger*, 295 U.S. at 88. The most important consideration for this court is whether the prosecutor's comments concerning the lost bridge tapes "so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. 637). Moreover, the Supreme Court has admonished that the "appropriate standard of review for [a prosecutorial misconduct] claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Id.* (quoting *Donnelly*, 416 U.S. at 642.).

Here, the California Court of Appeal reasonably concluded that there was no prosecutorial misconduct. The court noted that the prosecutor urged the jury to make a reasonable inference based on the evidence, and that the only time the prosecutor did misstate the evidence, the court explained that the error was isolated and did not constitute "the type of unfairness, deception, or reprehensible conduct necessary for a finding of prosecutorial misconduct." *Wells*, 2007 WL 466963, at *7. Further, the state appellate court reasonably concluded this single error was not "of such significance to have prejudiced the jury's decision in light of the record presented, which included strong independent evidence pointing to [Wells] as the shooter." *Id.* The Supreme Court made clear in *Darden* that when assessing the fairness of a petitioner's trial in light of a claim for prosecutorial misconduct, a major consideration is "the weight of evidence against the petitioner." *Darden*, 447 U.S. at 182.

Accordingly, this Court cannot find that the decision of the California Court of Appeal that there was no prosecutorial misconduct was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Furthermore, this Court cannot say that the state court unreasonably applied the correct legal principle to the facts of the Wells'

case within the scope of *Andrade-Williams-Schriro-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.  Wells is not entitle to relief under subpart a of his second ground.

<u>Ground 2(c): The Trial Court's Instruction Concerning the Appellate Court's Decision</u>

Wells contends that the trial court erred by instructing the jury that the Court of Appeal had already found no bad faith or due process violation on the part of Detective Iacono concerning the loss of the bridge tapes.  Doc. No. 1 at 97.  Specifically, Wells challenges the trial court's instruction to the jury on this issue, which stated:

> Before you hear the arguments, I do want to address an issue that arose on Friday, just to put it in perspective for you. Last Friday, on July 29th, 2005, you were present while the Court heard and denied a defense motion to dismiss this case based on the return of the VHS videotapes to Caltrans by Detective Iacono.
> The Court of Appeal in San Francisco has reviewed the conduct of Detective Iacono and found that there was no evidence that he acted in bad faith and that the return of the tapes to Caltrans did not violate Mr. Wells' right to due process under any law.  This legal issue was decided by the Court of Appeal on Janurary 26th, 2005.  Thus, that legal issue is not before you for consideration. So that is my admonition to you.

Eh. 2, Vol. 4, at 1019.

1.  State Court Decision

Although the California Court of Appeal ultimately denied Wells' claim that the trial court erred instructing the jury about the state appellate court's finding of no bad faith and no due process violation, it agreed with Wells that the trial court's instruction was "unnecessary and irrelevant."  *Wells*, 2007 WL 466963, at *8-9.  The court explained:

> Although the trial court concluded that it was compelled to give the instruction because defense counsel had put the issue before the jury, the record makes clear that, with foreknowledge of the content of defense counsel's motion, the court directed her

to argue the motion in open court.  Because the trial court could easily have deferred argument, defense counsel cannot be blamed for the jury's exposure to the argument. Further, the trial court could have mitigated any prejudice simply by instructing the jury that it was not to concern itself with the content of the motion or the arguments of counsel, since these were legal issues.  The trial court accomplished nothing by proceeding to instruct the jury on the substance of this court's decision, which was irrelevant to its factfinding.

*Id.* at *8.

The California Court of Appeal, nevertheless, determined that the "trial court's instruction was harmless." The court explained:

The instruction concerned matters that had very little bearing on the issues before the jury.  The jury was asked to decide, on the evidence before it, whether defendant had committed the shooting beyond a reasonable doubt.  The legal issues surrounding the loss of the videotapes, such as whether the detective's testimony constituted evidence comparable to the tapes and whether the loss of the tapes occurred through bad faith or constituted a deprivation of due process, were simply irrelevant to this factual question.   Contrary to defendant's claim, the instruction did not bolster the prosecution's argument that the detectives "missed" defendant's car; the instruction addressed only the propriety of the conduct of the detectives in failing to maintain the evidence.   Defense counsel was free to, and did, argue the significance of the detectives' failure to find defendant's car.  In any event, the evidence of defendant's guilt was sufficiently compelling to outweigh any minimal prejudicial effect from the instruction.

*Id.* at *9.

2.  Analysis

A challenged instruction violates the Federal Constitution only if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California,* 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  It is well established that not only must the challenged instruction be

erroneous but it must violate some constitutional right and may not be judged in artificial

isolation, but must be considered in the context of the instructions as a whole and the trial record.

*Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  This Court must also bear in mind that the Supreme

Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury

applied the challenged instruction in a way that violates the constitution and that the category of

infractions that violate "fundamental fairness" is very narrowly drawn.  *Id.* at 73 (quoting

*Dowling v. United States*, 493 U.S. 342, 352 (1990)).

  Although the court of appeal found the trial court's instruction unnecessary and

irrelevant, there is no indication that the trial court's instruction had any bearing on the jury's

assessment of guilt.  Further, the state appellate court found the evidence against Wells was

overwhelming, noting that even if the instruction was irrelevant, the evidence of Wells' guilt

"was sufficiently compelling to outweigh any minimal prejudicial effect from the instruction."

*Wells*, 2007 WL 466963, at *9.

  Finally, even assuming that the instruction somehow violated Wells' constitutional right

to due process, Wells would still not be entitled to relief on this ground.  As the state appellate

court explained, the instruction is subject to a harmless error analysis.  *Id.* at *9.  Before this

Court may grant relief, it must find that any constitutional error was not harmless.  Specifically,

under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), this Court must find that the error "had a

substantial and injurious effect or influence in determining the [outcome]."  *Id.* at 622.  "Only if

the record demonstrates that the jury's decision was substantially influenced by the error or there

is grave doubt about whether an error affected a jury will [Wells] be entitled to relief."  *Sechrest*

*v. Ignacio*, 549 F.3d 789, 808 (9th Cir. 2008) (citations and internal quotation marks omitted).  In

applying *Brecht*, this Court assesses the strength of the state's evidence apart from the erroneously admitted evidence. *Sims v. Brown*, 425 F.3d 560, 570–71 (9th Cir. 2005).

In Wells' case, it is clear that even assuming the trial court erred instructing the jury on the state appellate court's decision, there is no indication that the instruction "had a substantial and injurious effect or influence in determining" the jury's guilty verdict. Accordingly, Wells is not entitled to relief under subpart c of his second ground.

Ground 2(d): Trial Court's Failure to Permit Surrebuttal

Wells claims that the trial court erred in not permitting his defense counsel surrebuttal argument on the lost bridge tapes in response to the prosecutor's contention that the Detective merely missed the Mustang. Doc. No. 1 at 102. He further claims that the court's decision infringed his Sixth Amendment right to effective assistance of counsel during closing argument, because without surrebuttal, the his counsel could not refute the prosecutions claim that Detective Iacono merely "missed" the Mustang on the bridge tapes. *Id.* at 103.

1. State Court Decision

In rejecting the Wells' contention that the trial court erred denying defense counsel's request for surrebuttal, the California Court of Appeal noted that the "trial court is given great latitude in controlling the duration and limiting the scope of closing summations," and that the trial court has "'broad discretion' in deciding the scope of surrebuttal argument, including whether to permit it at all." *Wells*, 2007 WL 466963, at *8. Thus, the appellate court held:

> We find no abuse of discretion in the trial court's decision not to permit surrebuttal argument. The argument made by the prosecutor was based (with the minor exception noted above) on evidence presented at trial. The argument that the videotapes were imperfect was an obvious response to defense counsel's insistence on the exculpatory weight of the detectives' failure to find defendant's car in

reviewing them.  It therefore could have been anticipated and addressed in defense counsel's closing.  There was nothing surprising or unusual justifying an opportunity for surrebuttal. [Moreover], [n]o new evidence was admitted, and the prosecutor's argument, based on existing evidence, could have been anticipated by defense counsel.

*Id.*

### 2. Analysis

The Supreme Court has held that defendant's have a Sixth Amendment "right to effective assistance of counsel" and to "have counsel present at all critical stages of a criminal proceeding." *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012).  The Supreme Court has also held that the right to the presence of counsel at all critical stages includes the right to counsel during closing argument.  *Herring v. New York*, 422 U.S. 853, 857 (1975) ("Accordingly, it has been universally held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution . . . .").  Here, Wells' defense counsel had the opportunity to make a closing argument.

The Supreme Court, however, has never held that there is a constitutional right to surrebuttal.  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Musladin*, 549 U.S. at 77; *Van Patten*, 552 U.S. at 126.

Accordingly, this Court cannot say that the California Court of Appeal's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Wells is not entitled to relief on subpart d of his second ground.

36

Ground 2(f): Admission of Expert Testimony on Cell Transmissions/Kelly Hearing

Wells claims the trial court erred not granting him a *Kelly* hearing under *People v. Kelly*, 17 Cal.3d 24 (1976), to question the scientific reliability of the expert testimony introduced at trial to show that Wells' cell phone was within five miles of the crime scene on the night of the murder. Specifically, the cell phone evidence showed Wells' cell phone was used that night, and based on the towers which the calls were routed, the evidence showed that Wells' phone made a trip to the murder scene at the same time of the murder. Wells claims that the trial court erred in failing to grant a *Kelly* hearing because under the standards of *Kelly*, the expert testimony would have been inadmissible. Doc. No. 1 at 112-114.

    1.  State Appellate Court

In rejecting Wells' claim, the California Court of Appeal explained that "absent some special feature which effectively blindsides the jury, expert opinion testimony is not subject to Kelly." *Wells*, 2007 WL 466963, at *10 (citations omitted). The Court noted that *Kelly* "only applies to that limited class of expert testimony which is based, in whole or part, on a technique, process, or theory which is new to science and, even more so, new to the law." *Id.* Contrary to Wells' contention, the California Court of Appeal stated:

> It is simply not true, as defendant contends, that the use of cell phones to locate a caller is new to the law. Cell phone evidence has been introduced for that purpose in a number of cases across the country, including one in California that was reported well before defendant's trial, without any concern for the validity of the underlying science.
>
> Nor is it clear, even if the use of cell phone records for this purpose truly were new to the law, that this is the type of unfamiliar technique "foreign to everyday experience" whose application requires validation under *Kelly.* It is within the common experience of every person who has used a radio or television antenna that electromagnetic signals are broadcast and received over a distance. There is therefore nothing unusual or foreign in the notion that the cellular telephone system uses

towers that receive call signals broadcast from cell phones near to them.  Further, over 170 million Americans own cell phones, and "almost everyone is presumably aware in a general sense that making cell calls entails sending and receiving information via cell towers."  Recipients of cell phone bills will generally appreciate that the company has some idea of where their calls originate, since the bills often list the general location of calls.

       . . . .

       Of course, the denial of a *Kelly* hearing did not require the jury to accept the expert's testimony as gospel.  If defendant found the engineer's testimony to be inaccurate or incomplete, he was free to point out those issues through cross-examination or the presentation of contrary expert testimony.  Defense counsel did, in fact, cross-examine the Sprint engineer, who conceded that under certain circumstances a call would not be received by the nearest tower, particularly when the receiving ranges of adjoining towers overlapped.  In light of the everyday familiarity of cell phones and the simple logic of the technical concepts involved in identifying the location of callers, we agree with the trial court that a *Kelly* hearing on reliability was unnecessary.

*Id.* at *11.

       2.  Analysis

To the extent that Wells raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw,* 546 U.S. at 76; *West v. Am. Tel. &Tel.,* 311 U.S. 223, 236 (1940).  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.  *See Hicks,* 485 U.S. at 629-30 & n.3 (noting state appellate court's determination of state law is binding and must be given deference).

Here, Wells is challenging the state court's failure to grant a *Kelly* hearing.  This challenge is to a state law evidence standard under California law.  Wells may not transform a

state-law issue into a federal one by simply asserting a violation of due process. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). "[The Supreme Court has] long recognized that 'a mere error of state law' is not a denial of due process." *Cooke*, 131 S. Ct. at 863 (quoting *Engle v. Isaac*, 456 U.S. 107, 121 (1982)). Furthermore, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *McGuire*, 502 U.S. at 72 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution." *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967). The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly*, 416 U.S. at 643). For example, the Supreme Court has barred the introduction of evidence in state-court-criminal proceedings that violated the Fourth Amendment (search and seizure), *Mapp v. Ohio*, 367 U.S. 643 (1961), Fifth Amendment (confessions), *Miranda v. Arizona*, 384 U.S. 436 (1966), Sixth Amendment (Confrontation Clause), *Crawford v. Washington*, 541 U.S. 36 (2004), and Sixth Amendment (right to counsel), *Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible). None of these infractions are implicated under the facts of Wells' case.

39

Furthermore, to the extent that the Supreme Court has ruled on the qualifications of expert witnesses, it has done so under its supervisory powers over the lower federal courts interpreting the federal rules of evidence, not as a matter of constitutional law.  *See, e.g., Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999); *Daubert v. Merrell Dow Pharmaceticals, Inc.*, 509 U.S. 579, 589-97 (1993).  Those Supreme Court cases that have applied constitutional principles are limited to those cases in which the *exclusion* of evidence infringed upon a weighty interest of the accused.  *See, e.g., Holmes v. South Carolina*, 547 319, 319-20 (2006) (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).  Additionally, like California, the decision of a federal trial court ruling on the admissibility of an expert opinion is reviewed for abuse of discretion.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997); *In re Jordan R.*, 2012 WL 1021661, at *5 (Cal. Ct. App. Mar. 27, 2012).  While abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.  *Lett*, 130 S. Ct. at 1862 (2010).

Because he fails to present an issue of constitutional dimension, Wells is not entitled to relief under subpart e of his second ground.

Ground 3: Cumulative Error and Prosecutorial Misconduct Denied Wells a Fair Trial

Wells claims that the alleged prosecutorial misconduct claim, combined with the alleged trial court errors under his second ground, cumulatively denied him a right to a fair trial. Wells has cited no Supreme Court decision in support of this claim. Additionally, for the reasons stated herein, this Court has decided that none of Wells' claims have merit; i.e., he is unable to show any constitutional violations. Accordingly, Wells is not entitled to relief under his third ground.

## V.  CONCLUSION AND ORDER

Wells' subpart b and e of his second ground are procedurally barred, and he is not entitled to relief under his first or third grounds.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion for Appointment of Counsel at **Docket No. 23** is **DENIED.**

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude  the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327 (2003)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 30, 2012.

　　　　　　　　　　　　　　　　　　　 /s/ James K. Singleton, Jr. 
　　　　　　　　　　　　　　　　　　JAMES K. SINGLETON, JR.
　　　　　　　　　　　　　　　　　　United States District Judge